## MASTER EQUIPMENT LEASE AGREEMENT

This Master Equipment Lease Agreement (this "Master Lease") dated as of November 6, 2012 is made by and between BB&T EQUIPMENT FINANCE CORPORATION, a North Carolina corporation ("Lessor"), and OAK GROVE RESOURCES, LLC, a Delaware limited liability company ("Lessee").

### TERMS AND CONDITIONS OF LEASE

1. Lease. Subject to the terms and conditions set forth herein, Lessor and Lessee shall execute and deliver equipment schedules in form and substance reasonably satisfactory to Lessor (each, an "Equipment Schedule") and pursuant to each Equipment Schedule Lessor shall lease to Lessee the equipment and other property described on such Equipment Schedule (together with all parts, additions and accessories incorporated therein, and software incorporated therein, the "Equipment"). Each Equipment Schedule will incorporate by reference this Master Lease and will specify certain terms relating to the leasing of the Equipment (this Master Lease as incorporated into each Equipment Schedule, shall be referred to as a "Lease"). Each Equipment Schedule, together with this Master Lease, incorporated therein shall constitute a separate and enforceable Lease. In the event that any term of any Equipment Schedule conflicts with or is inconsistent with any term of this Master Lease, the terms of the Equipment Schedule shall govern. As used herein, capitalized terms shall have the meanings derived from the table in Section 22 of this Agreement.

2. Term. Unless otherwise specified on an Equipment Schedule, the Base Lease Term for the Equipment shall commence on the date an Acceptance Certificate (as defined in Section 5) is executed with respect thereto (the "Delivery and Acceptance Date") and shall expire on the Expiration Date. As used herein, with respect to the Equipment, "Term" shall mean such base lease term; *provided, however,* that this Master Lease shall be effective from and after the date of execution hereof. Except as otherwise provided in this Master Lease or any Equipment Schedule, all obligations of Lessee hereunder shall survive the expiration, cancellation or other termination of the Term. Provided that no Default or Event of Default (each as defined in Section 16) has occurred and is continuing, Lessor shall not interfere with Lessee's quiet use and possession of the Equipment.

3. Rent. Lessee shall pay Lessor for the leasing of the Equipment hereunder the periodic rental payments ("Base Term Rental") on the dates (each a "Rent Payment Date") and in the amounts set forth in the Equipment Schedule. Base Term Rental together with all other additional amounts as may from time to time be payable under any Lease and the other Lease Documents (as defined in Section 4) is referred to herein as "Rent". Rent shall be due whether or not Lessee has received any notice that such payments are due. All Rent shall be paid to Lessor at its address set forth in Section 21(c) of this Master Lease or as otherwise directed by Lessor in writing. If any Rent is not paid when due (or within 10 days thereafter) Lessee shall pay to Lessor a late payment fee equal to three percent (3%) of the amount of such Rent.

4. Net Lease. Each Lease shall constitute a non-cancelable net lease, it being the intention of the parties that all costs, expenses and liability associated with the Equipment and each Lease shall be borne by Lessee. So long as Lessor shall observe its covenant of quiet enjoyment described in the last sentence of Section 2 hereof, Lessee's obligation to pay Rent and otherwise to perform its obligations under all Leases and each other document and agreement executed in connection with all Leases (together with all Leases, collectively, the "Lease Documents") shall be irrevocable, absolute and unconditional and shall not be subject to diminution, abatement or recoupment for any reason whatsoever.

5. Acceptance. Upon delivery of the Equipment, Lessee shall promptly inspect and test such Equipment and, if acceptable to Lessee, accept such Equipment and deliver to Lessor an acceptance

4046

certificate in form and substance reasonably satisfactory to Lessor ("Acceptance Certificate"). Lessee's execution and delivery of an Acceptance Certificate shall be conclusive evidence as between Lessor and Lessee that the Equipment referred to therein is acceptable for all purposes hereof and under the applicable Lease. Lessee represents that it has selected both (a) the Equipment, and (b) the manufacturer, vendor or other supplier of the Equipment (the "Supplier") without assistance from Lessor and either is a party to, or has received a copy of, each agreement and document by which Lessor acquired the Equipment or the right to possession and use of the Equipment (including any documents or agreements with the Supplier (collectively, the "Supply Contract") prior to the Delivery and Acceptance Date applicable thereto. Lessee hereby assumes the risks, burdens, and obligations to any manufacturer or vendor of any Equipment on account of nondelivery, nonacceptance or nonperformance of the Equipment.

6. Disclaimer of Warranties; Limitation of Damages. THE EQUIPMENT IS BEING LEASED TO THE LESSEE BY THE LESSOR "AS IS, WHERE IS". LESSOR DOES NOT MAKE, HAS NOT MADE, SHALL NOT BE DEEMED TO MAKE OR HAVE MADE, AND EXPRESSLY DISCLAIMS TO LESSEE ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH ANY LAW, RULE, SPECIFICATION, OR CONTRACT PERTAINING THERETO, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE, IT BEING AGREED THAT ALL SUCH RISKS, AS BETWEEN LESSOR AND LESSEE, ARE TO BE BORNE BY LESSEE. NEITHER LESSOR NOR LESSEE SHALL HAVE ANY LIABILITY TO THE OTHER PARTY HERETO OR TO ANY THIRD PARTY FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS MASTER LEASE OR ANY LEASE. Notwithstanding the foregoing, and so long as no Default or Event of Default has occurred and is continuing hereunder, Lessor hereby transfers and assigns to Lessee, without recourse, any and all warranties, whether written or otherwise, made by any manufacturer, supplier or vendor with respect to any Equipment subject to a Lease.

7. Conditions Precedent. The obligation of Lessor to purchase the Equipment and to lease the same to Lessee shall be subject to satisfaction (or waiver by Lessor) of each of the following conditions, prior to the Delivery and Acceptance Date with respect to such Equipment: (a) Lessor shall have received each of the following documents in form and substance reasonably satisfactory to Lessor: (i) the Equipment Schedule relating to such Equipment duly executed by Lessee; (ii) an Acceptance Certificate for such Equipment duly executed by Lessee; (iii) if requested by Lessor, an assignment of Lessee's rights under the Supply Contract applicable to such Equipment and a consent thereto executed by Lessee and the Supplier in form and substance reasonably acceptable to Lessor; (iv) the original bills of sale evidencing chain of title from the Supplier to the Lessor relating to such Equipment; (v) a certificate of the secretary or assistant secretary of Lessee dated the date of such Equipment Schedule certifying the incumbency of each of the officers executing the applicable Lease Documents; (vi) a guaranty of all of Lessee's obligations under the applicable Lease (the "Guaranty"), duly executed by Cliffs Natural Resources, Inc. (the "Guarantor"); (vii) a certificate of the secretary or assistant secretary of Guarantor dated the date of such Equipment Schedule certifying the incumbency of the officer executing the Guaranty; and (viii) such other documents or agreements as may be required by the terms of the Equipment Schedule or as Lessor may reasonably request; (b) Lessor shall have the right (by assignment or otherwise) to purchase the Equipment identified in the applicable Equipment Schedule for a price not to exceed the Lessor's Capitalized Cost (as identified in such Equipment Schedule) and on terms and conditions otherwise reasonably satisfactory to the Lessor; (c) Lessor shall have received evidence of insurance policies covering the Equipment which comply with the requirements of Section 10, hereof; (d) the representations and warranties of the Lessee contained herein and in each of the Lease Documents shall

2

be true and correct on and as of the Delivery and Acceptance Date; (e) no Default or Event of Default shall have occurred and be continuing or result from the transactions contemplated by the applicable Lease; and (f) no material adverse change in the existing or prospective financial condition or results of operations of Lessee or Guarantor which may affect the ability of Lessee to perform its obligations under the Lease Documents or the ability of Guarantor to perform its obligations under the Guaranty, shall have occurred since the date of the most recent audited financial statements of Lessee delivered to Lessor.

8 Use and Maintenance: Alterations.

(a) Lessee covenants and agrees that it: (i) shall use the Equipment solely in the conduct of its business, for the purpose, and in the manner, for which the Equipment was designed, (and shall not permanently discontinue use of the Equipment); (ii) shall operate, maintain, service and repair the Equipment, and maintain all records and other materials relating thereto, (A) in accordance and consistent with (1) the terms and conditions set forth in each Lease, (2) the Supplier's recommendations and all maintenance and operating manuals or service agreements, whenever furnished or entered into, including any subsequent amendments or replacements thereof, issued by the Supplier or other service provider (including requiring all components, fuels and fluids installed in or used on the Equipment to meet the standards specified by the Supplier from time to time), (3) the requirements of all applicable insurance policies, (4) the Supply Contract, so as to preserve all of Lessee's and Lessor's rights there under, including all rights to any warranties, indemnities or other rights or remedies, and (5) all applicable laws; and (B) without limiting the foregoing, so as to cause the Equipment to be in good repair and operating condition and in at least the same condition as when delivered to Lessee hereunder, except for ordinary wear and tear resulting despite Lessee's full compliance with the terms hereof; (iii) shall not discriminate against the Equipment with respect to scheduling of maintenance, parts or service; (iv) shall not change the location of any Equipment as specified in the Equipment Schedule without the prior written consent of Lessor; and (v) to the extent requested by Lessor in writing, shall cause the Equipment to be continually marked, in a plain and distinct manner, with the name of Lessor followed by the words "Owner and Lessor," or other appropriate words designated by Lessor on labels furnished by Lessor.

(b) Lessee, at its own cost and expense, will promptly replace all parts, appliances, systems, components, instruments and other equipment ('Parts') incorporated in, or installed on, the Equipment which may from time to time become worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use for any reason whatsoever. In addition, in the ordinary course of maintenance, service repair, overhaul or testing, Lessee may remove any Parts, whether or not worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, *provided* that Lessee shall replace such Parts as promptly as practicable. All replacement Parts shall be free and clear of all Liens (as defined in Section 8(c)) and shall be in as good an operating condition as, and shall have a value and utility at least equal to, the Parts replaced, assuming such replaced Parts were in the condition and repair required to be maintained by the terms hereof. Any replacement Part installed, or incorporated on, the Equipment shall be considered an accession to such Equipment and title to such replacement Part shall immediately vest in Lessor without cost or expense to Lessor.

(c) Lessee will keep the Equipment and its interest therein free and clear of all liens, claims, mortgages, charges and encumbrances of any type regardless of how arising ('Liens') other than any Lien arising out of claims against Lessor not relating to the lease of the Equipment to Lessee ('Permitted Liens'). Lessee will defend, at its own expense, Lessor's title to the Equipment from all such Liens. If any Lien shall attach to any Equipment, Lessee will provide written notification to Lessor within five (5) business days after Lessee receives notice of any such attachment stating the full particulars thereof and the location of such Equipment on the date of such notification.

3

(d) At its sole option, Lessee may make any alteration, modification or attachment to the Equipment deemed appropriate by Lessee, *provided* that such alteration, modification, or attachment is of a type which is readily removable without damage to the Equipment, does not decrease the value, condition, utility or useful life of the Equipment or cause such Equipment to become "limited use property" (as defined in Revenue Procedure 2001-28, 2001-19 I.R.B. 1156 or any successor publication or Treasury Regulation issued pursuant to the Internal Revenue Code of 1986 (as amended, supplemented or modified from time to time, the "Code")), a fixture (as defined in the Uniform Commercial Code as in effect in any applicable jurisdiction), or real property or affect the insurability or impair any manufacturer's warranty with respect to the Equipment. All alterations, modifications and attachments of whatsoever kind or nature made to any Equipment that cannot be removed without damaging or reducing the functional capability, economic value or insurability of such Equipment or impairing any manufacturer's warranty shall only be made with the prior written consent of the Lessor and shall be deemed to be part of the Equipment. Under no circumstance shall any alteration, modification or attachment be subjected by Lessee to any encumbrance other than pursuant to a Lease.

9. Assignment and Sublease. Lessee shall not sublease or otherwise relinquish possession of any Equipment, or assign, transfer or encumber its rights, interests or obligations hereunder or under any Lease. No assignment, transfer or sublease, in any event, shall relieve Lessee of, and Lessee shall remain primarily liable for, its obligations under each Lease Document.

10. Insurance.

(a) Lessee shall provide, maintain and pay for insurance coverage with respect to the Equipment, insuring against, among other things, the loss, theft, damage, or destruction of the Equipment, in an amount not less than the replacement value of such Equipment, but shall be liable for Stipulated Loss Value (as defined in the applicable Equipment Schedule) of such Equipment at any time; and public liability and property damage with respect to the use or operation of the Equipment in an amount not less than $10,000,000 per occurrence. All insurance against loss shall name Lessor and its Assignees as a lender loss payee and all liability insurance shall name Lessor and its Assignees and their subsidiaries and affiliated companies, and their successors and assigns as additional insureds. All of such insurance shall be in such form as is customary for Lessee and is reasonably acceptable to Lessor and from such companies as Lessee shall choose and which are reasonably acceptable to Lessor.

(b) Prior to the Delivery and Acceptance Date for any Equipment, and thereafter, not less than 5 business days prior to each renewal or replacement of such insurance, Lessee will deliver to Lessor certificates of insurance evidencing the insurance required to be maintained pursuant hereto, in form and substance reasonably acceptable to Lessor. Lessor agrees that (i) such insurance will be reasonably acceptable to Lessor if the coverage provided is such that is typically maintained by other companies carrying on the business of Lessee, and (ii) for the avoidance of doubt, the evidence of insurance provided by Lessee to Lessor at the time of the execution of this Master Lease is acceptable to Lessor.

(c) The proceeds (if any) of the insurance maintained by Lessee that are received with respect to the loss or damage of any Equipment, shall be applied and paid first, if no Event of Loss has occurred, to Lessee for any amount then due and payable by Lessee under the applicable Lease, second, if an Event of Loss (as defined in Section 11) has occurred, to Lessor for the payment of Stipulated Loss Value or other amounts due to Lessor as a result of such Event of Loss, and then to Lessee for its reasonable, documented, out-of-pocket costs to repair or replace such item of Equipment pursuant to Section 11(b)(i), to the extent that such repairs or replacements were necessitated by the occurrence of the loss for which such proceeds were paid, third, to Lessee to reimburse Lessee for any Stipulated Loss Value actually paid to and retained by Lessor, and fourth, any excess to Lessor. Proceeds of any liability insurance shall promptly be paid to the party entitled thereto.

4

(d) Notwithstanding anything set forth herein to the contrary, so long as no Event of Default has occurred, Lessee shall have the right to self-insure through the maintenance of a self-insured deductibles (not to exceed $3,000,000 per deductible) with respect to the all-risk property insurance and liability insurance required to be maintained by the Lessee. Lessee's right to self-insure for a casualty to the Equipment and for liability coverage as described above shall terminate upon (i) the occurrence of an Event of Default hereunder, or (ii) if Lessor determines, in its sole discretion and in good faith, that there has been a material adverse change in the financial condition of the Lessee or the Guarantor since the date of this Master Lease. Upon such termination, Lessee agrees to obtain the all-risk property insurance and liability insurance required above, with nominal deductibles reasonably acceptable to Lessor, and provide satisfactory evidence of same to Lessor, within fifteen (15) days of notice from Lessor that Lessee's right to self-insure has been terminated. Lessee's right to self-insure provided under this subsection (d) shall only be applicable if Lessee has provided Lessor with evidence reasonably satisfactory to Lessor that Lessee maintains the required amount of all-risk property insurance and liability insurance over and above the self-insured deductible amounts.

11. Risk of Loss; Damage to Equipment.

(a) Lessee shall bear the entire risk of loss and damage to any and all Equipment from any cause whatsoever, whether or not insured against, during the Term until the Equipment is returned to Lessor in accordance with Section 14 hereof. No loss or damage shall relieve Lessee of the obligation to pay Rent or of any other obligation under the Lease applicable to the affected Equipment; provided, however, if an Event of Loss occurs and proceeds of insurance described in Section 10 above received by Lessor are sufficient to pay in full all such obligations, then no further Rents are due Lessor with respect to such Lease. An 'Event of Loss' shall be deemed to have occurred with respect to any Equipment if such Equipment or any material part thereof has been lost, stolen, damaged beyond repair or damaged in such a manner that results in an insurance settlement on the basis of an actual or arranged total loss.

(b) If an Event of Loss to any Equipment has occurred, Lessee shall immediately notify Lessor of same, and Lessee shall: (i) not more than forty-five (45) days following such Event of Loss (or such longer period as Lessor and Lessee shall jointly determine) replace such Equipment with replacement equipment in as good condition and repair, and with the same value remaining useful economic life and utility, as such replaced Equipment immediately preceding the Event of Loss (assuming that such replaced Equipment was in the condition required by the applicable Lease), which replacement equipment shall immediately, and without further act, be deemed to constitute Equipment and be fully subject to the applicable Lease as if originally leased hereunder and shall be free and clear of all Liens; or (ii) pay to Lessor on the next succeeding Rent Payment Date the sum of (A) all Rent due and owing hereunder with respect to such Equipment (at the time of such payment) including all Base Term Rental payable on such Rent Payment Date plus (B) the Stipulated Loss Value as of such Rent Payment Date with respect to such Equipment. Upon Lessor's receipt of the payment required under subsection (ii) above, Lessee shall be entitled to Lessor's interest in such Equipment, in its then condition and location, "as is" and "where is", without any representations or warranties, express or implied and upon Lessee's written request, Lessor shall execute such documents as are reasonably necessary and customary to evidence such conveyance.

12. Financial, Other Information and Notices.

(a) Lessee shall furnish to Lessor within one hundred twenty (120) days after the end of each fiscal year of Lessee, a copy of Lessee's year end financial statements, prepared internally and certified as true, accurate and complete by the Chief Financial Officer of Lessee, and all such financial statements shall be prepared in accordance with generally accepted accounting principles, consistently applied.

5

(b) Lessee shall provide prompt written notice to Lessor (i) of any Event of Default (ii) of any loss or damage (except ordinary wear and tear) to any Equipment or any Event of Loss with respect to any Equipment, and (iii) any existing or threatened investigation, claim or action by any governmental authority, which could adversely affect the Equipment or any Lease.

(c) Lessee shall furnish such other information as Lessor may reasonably request in writing from time to time relating to the Equipment, each Lease or the financial condition of Lessee, including, without limitation, internally prepared quarterly financial statements of the Lessee.

(d) Guarantor is the indirect parent of the Lessee. Lessee shall cause Guarantor to furnish to Lessor within one hundred twenty (120) days after the end of each fiscal year of Guarantor, a copy of Guarantor's year end financial statements audited by a firm of independent certified public accountants acceptable to Lessor (which acceptance shall not be unreasonably withheld) and accompanied by an audit opinion of such accountants without qualification, and all such financial statements shall be prepared in accordance with generally accepted accounting principles consistently applied. Lessee shall also cause Guarantor to furnish such other information as Lessor may reasonably request in writing from time to time relating to the financial condition of Guarantor, including, without limitation, internally prepared quarterly financial statements of Guarantor. Notwithstanding the foregoing, Lessee shall be deemed to have complied with the foregoing requirements set forth in this subsection (d), if Guarantor files Forms 10-K and 10-Q with the Securities and Exchange Commission that are publicly available, and with respect to the annual financial statements are available within the time frame set forth above, and all such financial statements (or Forms 10-Q and 10-K) shall fairly present the financial condition and the results of operations of Guarantor as of the date of and for the period covered by such statements.

13. Inspections. Upon written advance notice and at its own risk of loss, Lessor may from time to time during Lessee's normal business hours, inspect the Equipment and Lessee's records with respect thereto. If a Default or Event of Default has occurred and is continuing hereunder, Lessor will only be required to provide such notice to Lessee (which may be telephonic or written) which is necessary for Lessor to comply with Lessee's security requirements, and in any event, such prior notice shall not exceed twenty-four (24) hours. Lessee shall cooperate with Lessor in scheduling such inspection and in making the Equipment available for inspection by Lessor or its designee at locations as specified by Lessee. Lessee will, upon reasonable request, provide a report on the condition of the Equipment, a record of its maintenance and repair, a summary of all items suffering an Event of Loss, or such other information or evidence of compliance with Lessee's obligations under each Lease as Lessor may reasonably request.

14. Condition Upon Return. At the expiration of the Term, and upon any cancellation or termination of a Lease by Lessor following the occurrence of an Event of Default, unless Lessee has elected to purchase the Equipment subject to such Lease in accordance with the terms thereof, Lessee shall promptly, at its own cost and expense: (a) perform any testing and repairs required to place such Equipment in the same condition and appearance as when received by Lessee (reasonable wear and tear excepted) and in good working order for its originally intended purpose and eligible for manufacturer's maintenance (if available), free of all Lessee's markings and free of all Liens other than Permitted Liens; (b) if de-installation, disassembly or crating is required, cause such Equipment to be de-installed, disassembled and crated by an authorized manufacturer's representative or such other service person as is reasonably satisfactory to Lessor; and (c) return such Equipment in the condition and in the manner specified in such Lease (collectively, the "Return Condition"). The Equipment, as returned, will include related maintenance logs, operating manuals, and other related materials. All operating manuals for the Equipment must be returned to Lessor undamaged and containing all pages. If lost or destroyed, Lessee shall, at its own expense, provide replacement-operating manuals. Lessor may, but is not required to, inspect the Equipment prior to its return. If after an inspection Lessor determines that the Equipment does not conform to the Return Condition, Lessor will promptly notify Lessee of such determination specifying

6

the repairs or refurbishments needed to place the Equipment in the Return Condition. Lessee may, at its option, either authorize Lessor to effect such repairs or itself effect such repairs. In either case, all costs associated with any repairs and inspections will be paid by Lessee. Until Lessee has returned the Equipment in compliance with the requirements of the applicable Lease, such Lease shall continue in full force and effect and Lessee shall continue to pay Rent notwithstanding any expiration of the Term or cancellation or termination of such Lease through and including the date on which the Equipment is accepted for return by Lessor as conforming with the Return Condition. If Lessor does not provide notification to Lessee specifying the repairs or refurbishments needed to place the Equipment in the Return Condition within thirty (30) days following the date such Equipment have been returned by Lessee, the Equipment shall be deemed to conform to the Return Condition.

15. <u>Lessee's Representations and Warranties</u>. Lessee represents and warrants as of the date of execution and delivery of this Master Lease and each Equipment Schedule as follows: (a) Lessee is duly organized, validly existing under the laws of the jurisdiction of its organization with full power to enter into and to pay and perform its obligations under the Equipment Schedule and this Master Lease as incorporated therein by reference, and is duly qualified or licensed in all other jurisdictions where its failure to so qualify would adversely affect the conduct of its business or its ability to perform any of its obligations under or the enforceability of this Master Lease and each Equipment Schedule; (b) each Equipment Schedule, this Master Lease and all other Lease Documents have been duly authorized, executed and delivered by Lessee, are valid, legal and binding obligations of Lessee, are enforceable against Lessee in accordance with their terms and do not and will not contravene any provisions of or constitute a default under Lessee's organization documents, any agreement to which it is a party or by which it or any of its property is bound, or any applicable law, regulation or order of any governmental authority; (c) Lessor's right, title and interest in and to the Equipment and the Rent there from will vest in Lessor upon Lessee's acceptance of the Equipment for lease hereunder and will not be affected or impaired by the terms of any agreement or instrument by which Lessee or any of its property is bound; (d) no approval of, or filing with, any governmental authority or other person is required in connection with Lessee's entering into, or the payment or performance of its obligations under, this Master Lease, each Equipment Schedule and the other Lease Documents; (e) there are no suits or proceedings pending or, to the knowledge of Lessee, threatened, before any court or governmental agency against or affecting Lessee which, if decided adversely to Lessee, would adversely affect the conduct of its business or its ability to perform any of its obligations under or the enforceability of this Master Lease, each Equipment Schedule and the other Lease Documents; (f) the financial statements of Lessee which have been delivered to Lessor have been prepared in accordance with generally accepted accounting principles consistently applied, and fairly present Lessee's financial condition and the results of its operations as of the date of and for the period covered by such statements (subject to customary year-end adjustments), and since the date of such statements there has been no adverse change in such financial condition or operations; (g) Lessee's full and correct legal name, form of organization and the location of its jurisdiction of organization is set forth in the initial paragraph of this Master Lease and Lessee will not change its legal name, form of organization or the location of its jurisdiction of organization without giving to Lessor written notice promptly (and in any event within thirty (30) days) following any such change; (h) the Equipment will always be used for business or commercial, and not personal, purposes; (i) Lessee is not in default under any material obligation for borrowed money, for the deferred purchase price of property or any lease agreement which, either individually or in the aggregate, would have a material adverse effect on the condition of its business or its ability to perform any of its obligations under or the enforceability of this Master Lease, each Equipment Schedule and the other Lease Documents; (j) under the laws of the jurisdiction(s) in which the Equipment is to be located, the Equipment consists solely of personal property and not fixtures; and (k) to the best of Lessee's knowledge, Lessee is, and will remain, in full compliance with all laws and regulations applicable to it; (l) to the best of Lessee's knowledge, no person who owns a controlling interest in or otherwise controls Lessee is (A) listed on the Specially Designated National and Blocked Person List maintained by the Office of Foreign Assets Control

7

('OFAC'), Department of the Treasury or any other similar lists maintained by OFAC pursuant to any authorizing statute, executive order or regulations (B) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar executive order and (C) Lessee is in compliance with all applicable Bank Secrecy Act ('BSA') laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations; and (m) Lessee's federal taxpayer identification number is 04-3740300.

16. Events of Default and Remedies.

(a) Each of the following events constitutes an "Event of Default" hereunder and any event that, with the passage of time or the giving of notice, or both, would constitute an Event of Default shall constitute a 'Default' hereunder: (i) Lessee fails to pay any Rent when due under any Lease and such failure continues for a period of ten (10) days; (ii) any representation or warranty made by Lessee in any Lease Document shall at any time prove to have been incorrect in any material respect as and when made; (iii) Lessee fails (A) to obtain and maintain the insurance coverage required herein or to observe the covenant described above in Section 15(g) of this Master Lease, or (B) fails to observe or perform any other covenant, condition or agreement under any Lease Document and, in the case of clause (B), such failure continues unremedied for a period of fifteen (15) days after written notice of such event has been delivered to Lessee; (iv) Lessee or Guarantor shall have consolidated with, merged with or into, or conveyed, sold or otherwise transferred all or substantially all of its assets to another entity, or shall have failed to maintain its corporate existence, unless prior to the consummation of such transaction, (A) Lessee or Guarantor, as applicable, obtains written confirmation from Lessor that Lessor, after giving effect to the transaction, is satisfied as to the surviving or purchasing entity's creditworthiness and conformance to the other criteria then used by Lessor when approving similar transactions, and (B) the surviving or purchasing entity (i) is organized and existing under the laws of the United States or any state thereof, and (ii) if Lessee or Guarantor, as applicable, shall not be the entity surviving such transaction or purchasing such assets, the surviving or purchasing entity executes and delivers to Lessor (x) an agreement satisfactory to Lessor pursuant to which such entity assumes and agrees to be fully liable for all of Lessee's or Guarantor's obligations under each Lease Document or Guaranty, as applicable, and (y) any and all other documents, agreements, instruments, certificates, opinions and filings reasonably requested by Lessor; (v) Lessee or Guarantor (A) ceases doing business as a going concern; (B) makes an assignment for the benefit of creditors or admits in writing its inability to pay its debts as they mature or generally fails to pay its debts as they become due; (C) initiates any voluntary bankruptcy, reorganization, insolvency or similar proceeding; (D) fails to obtain the discharge of any bankruptcy, reorganization, insolvency or similar proceeding initiated against it by others within sixty (60) days of the date such proceedings were initiated; (E) requests or consents to the appointment of a trustee, custodian or receiver or other officer with similar powers for itself or a substantial part of its property; or (F) a trustee, custodian or receiver or other officer with similar powers is appointed for itself or for a substantial part of its property; (vi) Lessee fails to return the Equipment or fails to return the Equipment in the required condition at the expiration of the Term; (vii) a default shall have occurred and be continuing under any contract, agreement or document between Lessee and Lessor or any affiliate of Lessor; (viii) a material adverse change in Lessee's or Guarantor's existing or prospective financial condition or results of operations since the date hereof which may affect the ability of Lessee or the Guarantor to perform its obligations under the Lease Documents or the Guaranty, as applicable, shall occur and be continuing; (ix) the owners of the capital stock or other units of ownership on the date of this Master Lease entitled to vote for the election of the Board of Directors of the Lessee or other similar governing body cease to own, either directly or indirectly, or do not have the unencumbered right to vote in the aggregate at least eighty-five percent (85%) of such capital stock or other ownership interest of Lessee.

(b) Upon the occurrence of an Event of Default, Lessor may exercise any one or more of the following remedies (none of which shall be exclusive) in enforcing its rights and remedies:

8

(i) Lessee shall upon written demand assemble or cause to be assembled any or all of the Equipment at the location designated by Lessor; and/or return promptly, at Lessee's expense, any and all of the Equipment to Lessor at such location, in the condition and otherwise in accordance with all of the terms of Section 14 hereof;

(ii) Upon advance written notice and at its own risk, Lessor may itself or by its agents pursuant to court order or other process of law enter upon the premises of Lessee or any other location where the Equipment is located, take possession of the Equipment and remove the Equipment from such premises; and/or

(iii) Sell, re-lease or otherwise dispose of any or all of the Equipment, in Lessor's possession, at public or private sale with notice to Lessee, with the right of Lessor to purchase and apply the net proceeds of such disposition, after deducting all reasonable costs of such disposition (including but not limited to costs of transportation, possession, storage, refurbishing, advertising and brokers' fees), to the obligations of Lessee under each Lease Document, with Lessee remaining liable for any deficiency and with any excess being retained by Lessor, provided only that Lessor shall provide a timely written accounting for such disposition to Lessee; and/or

(iv) Cancel each Lease Document as to any or all of the Equipment; and/or

(v) Proceed by appropriate court action, either at law or in equity (including an action for specific performance), to enforce performance by Lessee or to recover damages associated with such Event of Default; or exercise any other right or remedy available to Lessor at law or in equity; and/or

(vi) By offset, recoupment or other manner of application, apply any security deposit, monies held in deposit or other sums then held by Lessor or any affiliate of Lessor, and with respect to which Lessee has an interest, against any obligations of Lessee arising under each Lease Document, whether or not Lessee has pledged, assigned or granted a security interest to Lessor in any or all such sums as collateral for said obligations, provided only that Lessor shall provide a timely written accounting for such application to Lessee.

(c) In the alternative, Lessee shall pay to Lessor on demand the sum of (i) any and all Rent which is then due or which has accrued to the date of demand and (ii) at Lessor's option (A) an amount equal to the Stipulated Loss Value (as set forth in the related Equipment Schedule) as of the Rent Payment Date on or immediately preceding the date of demand for the Equipment as Lessor shall specify or (B) all Basic Rent and all other sums, including any tax indemnities becoming due as a result of such Event of Default, for the Term and all amounts due upon the expiration of the Term including any return fees and/or any amounts due with respect to the mandatory purchase of the Equipment becoming due under each Lease Document from the date of demand to the Expiration Date for such Equipment plus the assumed residual value of such Equipment (as determined by Lessor). The Lessor and Lessee agree that Lessor shall be entitled to such amount as damages for loss of bargain and not as a penalty and that such amount is reasonable in light of the anticipated harm to Lessor caused by an Event of Default.

(d) If Lessee pays the full amount referred to in Section 16(c) to Lessor prior to the termination of a Lease as it relates to such Equipment, title to the relevant Equipment shall immediately vest in Lessee without representation or warranty by Lessor and upon Lessee's written request, Lessor shall execute such documents as are reasonably necessary and customary to evidence such conveyance. If Lessee fails to pay such amount and Lessor subsequently sells, releases or otherwise disposes of such Equipment, the amount due from Lessee under Section 16(c) shall be reduced by an amount equal to (i) the actual cash proceeds received and retained by Lessor upon any sale or disposition or (ii) if Lessor

9

leases such Equipment by a lease agreement substantially similar to a Lease, the present value of the rents (discounted using the implicit interest rate applicable to the Lease pursuant to which such Equipment was originally subject) payable under such subsequent lease for the period until the end of the Term applicable to such original Lease, in each case, net of all reasonable costs and expenses incurred in connection with such sale, disposition or lease including any incidental damages.

(e) A cancellation or termination hereunder shall occur only upon written notice by Lessor to Lessee, and only with respect to such Equipment as Lessor specifically elects to cancel or terminate by such notice. Except as to any such Equipment with respect to which there is a cancellation or termination, the Lease applicable thereto shall remain in full force and effect and Lessee shall be and remain liable for the full performance of all its obligations under such Lease.

(f) Each of the rights and remedies of Lessor hereunder and under the other Lease Documents is in addition to all of its other rights and remedies hereunder, under the other Lease Documents and under applicable law, and except as otherwise expressed herein, nothing in this Master Lease, any Lease or any other Lease Document shall be construed as limiting any such right or remedy. Lessor's failure to exercise or delay in exercising any right, power or remedy available to Lessor shall not constitute a waiver or otherwise affect or impair its rights to the future exercise of any such right, power or remedy. Waiver by Lessor of any Event of Default shall not be a waiver by Lessor of any other or subsequent Events of Default.

(g) Interest shall accrue and be payable on all amounts owed by Lessee under this Section 16 from the due date therefor until paid at a rate equal to 1% per month.

17. **General Indemnification.** Lessee shall pay, and shall indemnify and hold Lessor, its directors, officers, agents, employees, successors and assigns (each an "Indemnitee") harmless on an after-tax basis from and against, any and all liabilities, causes of action, claims, suits, penalties, damages, losses, costs or expenses (including reasonable attorneys' fees), obligations, liabilities, demands and judgments, and Liens, of any nature whatsoever (each a "Liability" and collectively "Liabilities") arising out of or in any way related to: (a) the Lease Documents, (b) the manufacture, purchase, ownership, title, selection, acceptance, rejection, possession, lease, sublease, operation, use, maintenance, documenting, inspection, control, loss, damage, destruction, removal, storage, surrender, sale, use, condition, delivery, nondelivery, return or other disposition of or any other matter relating to any Item of Equipment or any part or portion thereof (including, in each case and without limitation, latent or other defects, whether or not discoverable, any claim for patent, trademark or copyright infringement) and any and all Liabilities in any way relating to or arising out of injury to persons, properties or the environment or any and all Liabilities based on strict liability in tort, negligence, breach of warranties or violations of any regulatory law or requirement, (c) a failure to comply fully with applicable law and (d) Lessee's failure to perform any covenant, or Lessee's breach of any representation or warranty, hereunder; *provided*, that the foregoing indemnity shall not extend to the Liabilities to the extent resulting solely from the gross negligence or willful misconduct of an Indemnitee.

18. **General Tax Indemnification.** Lessee shall pay when due and shall indemnify and hold each Indemnitee harmless from and against (on an after-tax basis) any and all taxes, fees, withholdings, levies, imposts, duties, assessments and charges of any kind and nature ("Taxes") arising out of or related to this Master Lease, any Lease or any other Lease Document (together with interest and penalties thereon and including, without limitation, all property, sales, use, gross receipts, *ad valorem*, business and occupational, value added, leasing, leasing use, documentary, stamp or other taxes imposed upon or against any Indemnitee, Lessee or any Equipment by any governmental authority with respect to any Equipment or the manufacturing, ordering, sale, purchase, shipment, delivery, acceptance or rejection, ownership, titling, registration, leasing, subleasing, possession, use, operation, removal, return or other

dispossession thereof or upon the rents, receipts or earnings arising there from or upon or with respect to this Master Lease, any Lease or any other Lease Document whether payable at the inception of a Lease, during the Term thereof or at the expiration, termination or cancellation thereof, excepting only all United States federal, state and local taxes based on or measured by Lessor's net income. Whenever a Lease or any other Lease Document terminates as to any Equipment, Lessee shall, upon written request by Lessor, advance to Lessor the amount estimated by Lessor to be the Taxes on such Equipment which are not yet payable, but for which Lessee is responsible.

19. Ownership. Title to the Equipment shall at all times remain in Lessor and Lessee shall acquire no ownership, title, property, right, equity or interest in the Equipment other than its leasehold interest solely as Lessee hereunder, subject to all the terms and conditions hereof. The parties agree that in order to secure the prompt payment of Rent under and with respect to all Leases and other Lease Documents, and the performance and observance by Lessee of all the agreements, covenants and provisions thereof (collectively, the "Obligations"), Lessee hereby grants to Lessor a first priority security interest in all of Lessee's right, title and interest in the following (whether now existing or hereafter created and whether now owned or hereafter acquired): (1) the Equipment (including, without limitation, all inventory, equipment, fixtures or other property comprising the same), and general intangibles relating thereto, (2) additions, attachments, accessories and accessions thereto whether or not furnished by the Supplier of such Equipment, (3) all subleases (including the right to receive any payment there under and the right to make any election or determination or give any consent or waiver there under), chattel paper, accounts, security deposits and bills of sale relating thereto, (4) any and all substitutions, replacements or exchanges for any such Equipment or other collateral, and (5) any and all products and proceeds of any collateral hereunder (including all insurance and requisition proceeds and all other payments of any kind with respect to the Equipment). Lessee agrees that upon the occurrence of an Event of Default: (i) in addition to all of the other rights and remedies available to Lessor hereunder, Lessor shall have all of the rights and remedies of a secured party under the Uniform Commercial Code as enacted in the applicable jurisdiction; and (ii) the principal amount of the Obligations shall be an amount equal to the Stipulated Loss Value determined in accordance with Section 16(c) of this Master Lease and such principal amount shall accrue interest as set forth in Section 16(g) of this Master Lease. Lessee hereby authorizes Lessor to file, solely at the expense of Lessee, any Uniform Commercial Code financing statements or other similar documents that Lessor reasonably deems necessary or advisable to protect its interest. Lessee agrees promptly to execute and deliver to Lessor such further documents or other assurances, and to take such further action, including obtaining landlord and mortgagee waivers, as Lessor may from time to time reasonably request.

20. Assignment. Lessor may at any time assign, grant a security interest in, or otherwise dispose of (individually or collectively, a "Transfer"), all or any portion of its rights, title or interests in, to and under this Master Lease, any Equipment Schedule or any Equipment, together or separately, to one or more persons or entities (each, an "Assignee"). Upon any Transfer, this Master Lease and the applicable Lease shall remain in full force and effect. Within thirty (30) days after receiving written notice of any Transfer, it shall acknowledge receipt thereof in writing and execute, or otherwise authenticate, such further instruments as may be reasonably requested by Assignee with respect to such Transfer, including without limitation, a consent certifying certain material facts and circumstances related to the applicable Lease and the Equipment. Unless otherwise expressly agreed by Assignee, Assignee shall assume any and all of the obligations of Lessor under the applicable Lease. Upon written notice to Lessee of an assignment, Lessee agrees to pay the Rent with respect to the Equipment covered by such assignment to such Assignee in accordance with the instructions specified in such notice and Lessee shall not assert against Assignee any defense, counterclaim or offset that Lessee may have against Lessor. All obligations and liabilities of Lessee to Lessor under each Lease and each other Lease Document related to such Lease (including, without limitation, any schedules, exhibits, riders or other attachments attached

11

hereto or otherwise incorporated herein) are also hereby made for the express benefit of the applicable Assignee.

21. Miscellaneous.

(a) Lessee shall pay all costs and expenses of Lessor, including, without limitation, reasonable attorneys fees, the fees of any collection agencies and appraisers and all other costs and expenses related to any sale or re-lease of the Equipment (including storage costs), incurred by Lessor in the preparation and execution of any amendment or supplement to this Master Lease and each Lease Document, enforcing any of the terms, conditions or provisions hereof or thereof and in protecting the Lessor's rights hereunder and thereunder.

(b) This Master Lease and each Lease Document shall be governed by and construed in accordance with the laws of the State of Ohio. Any judicial proceeding arising out of or relating to this Master Lease or any Lease Document shall be brought only in a court of competent jurisdiction in Cuyahoga County, Ohio and each of the parties hereto (i) accepts the exclusive jurisdiction of such court and any related appellate court and agrees to be bound by any judgment rendered by such court in connection with any such proceeding and (ii) waives any objection it may now or hereafter have as to the venue of any such proceeding brought in such court or that such court is an inconvenient forum. EACH OF THE LESSEE AND LESSOR HEREBY WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY LAWSUIT OR PROCEEDING ARISING OUT OF OR IN ANY WAY RELATING TO THIS MASTER LEASE, ANY LEASE, OR ANY OTHER LEASE DOCUMENT EXECUTED IN CONNECTION THEREWITH.

(c) All notices delivered hereunder shall be in writing (including facsimile) and shall be delivered to the following addresses:

if to Lessee:

OAK GROVE RESOURCES, LLC
200 PUBLIC SQUARE, SUITE 3300
CLEVELAND, OH 44114
Attn: TREASURY DEPARTMENT
Facsimile: (216) 694-4023

if to Lessor:

BB&T EQUIPMENT FINANCE CORPORATION
600 Washington Avenue
Suite 201
Towson, MD 21204
Attention: Documentation Manager
Facsimile: (410) 825-1691

(d) Lessee acknowledges and agrees that time is of the essence with respect to its performance under the Lease Documents. Any failure of Lessor to require strict performance by Lessee or any waiver by Lessor of any provision herein shall not be construed as a consent or waiver of any provision of this Lease. This Master Lease and each Lease Document shall be binding upon, and inure to the benefit of, the parties hereto, their permitted successors and assigns.

(e) This Master Lease, together with all Lease Documents, constitutes the entire understanding or agreement between Lessor and Lessee with respect to the leasing of the Equipment, and supersedes all prior agreements, representations and understandings relating to the subject matter hereof. Neither this Master Lease nor any Lease Document may be amended except by a written instrument signed by Lessor and Lessee.

(f) This Master Lease and any Lease Document may be executed in any number of counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

(g) Any provision of this Master Lease or any Lease Document which is prohibited or unenforceable in any jurisdiction, shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof, and any such prohibition or unenforceability shall not invalidate or render unenforceable such provision in any other jurisdiction. Captions are intended for convenience or reference only, and shall not be construed to define, limit or describe the scope or intent of any provisions hereof.

22. Table of Definitions.

    (a)    'Acceptance Certificate'-as defined in Section 5 of this Master Lease.

    (b)    'as is' and 'where is' - as defined in Section 11(b) of this Master Lease.

    (c)    'Assignee'-as defined in Section 20 of this Master Lease.

    (d)    'Base Lease Term'-- with respect to an Equipment Schedule, as defined in such Equipment Schedule.

    (e)    'Base Term Rental'- as referenced in Section 3 of this Master Lease and, with respect to an Equipment Schedule, as defined in such Equipment Schedule.

    (f)    'BSA'- as defined in Section 15 of this Master Lease.

    (g)    'Code'- as defined in Section 8(d) of this Master Lease.

    (h)    'Default'- as defined in Section 16(a) of this Master Lease.

    (i)    'Delivery and Acceptance Date'- as defined in Section 2 of this Master Lease.

    (j)    'Equipment'- as defined in Section 1 of this Master Lease.

    (k)    'Equipment Schedule'-as defined in Section 1 of this Master Lease.

    (l)    'Event of Default'- as defined in Section 16(a) of this Master Lease.

    (m)    'Event of Loss'- as defined in Section 11(a) of this Master Lease.

    (n)    'Expiration Date'-with respect to an Equipment Schedule, as defined in such Equipment Schedule.

    (o)    'Guarantor'-as defined in Section 7 of this Master Lease.

(p) 'Guaranty'- as defined in Section 7 of this Master Lease.

(q) 'Indemnitee'- as defined in Section 17 of this Master Lease.

(r) 'Lease'- as defined in Section 1 of this Master Lease.

(s) 'Lease Documents'- as defined in Section 4 of this Master Lease.

(t) 'Lessee'- as defined in the first paragraph of this Master Lease.

(u) 'Lessor'- as defined in the first paragraph of this Master Lease.

(v) 'Liability'- as defined in Section 17 of this Master Lease.

(w) 'Liens'- as defined in Section 8(c) of this Master Lease.

(x) 'Master Lease'- as defined in the first paragraph of this Master Lease.

(y) 'Obligations'- as defined in Section 19 of this Master Lease.

(z) 'OFAC'- as defined in Section 15 of this Master Lease.

(aa) 'Parts'- as defined in Section 8(b) of this Master Lease.

(bb) 'Permitted Liens'- as defined in Section 8(c) of this Master Lease.

(cc) 'Rent'- as defined in Section 3 of this Master Lease.

(dd) 'Rent Payment Date'- as referenced in Section 3 of this Master Lease and, with respect to an Equipment Schedule, as defined in such Equipment Schedule.

(ee) 'Return Condition'- as defined in Section 14 of this Master Lease.

(ff) 'Stipulated Loss Value'- with respect to an Equipment Schedule, as defined in such Equipment Schedule.

(gg) 'Supplier'- as defined in Section 5 of this Master Lease.

(hh) 'Supply Contract'- as defined in Section 5 of this Master Lease.

(ii) 'Taxes'- as defined in Section 18 of this Master Lease.

(jj) 'Term'- as defined in Section 2 of this Master Lease.

(kk) 'Transfer'- as defined in Section 20 of this Master Lease.

[Remainder of page left intentionally blank; Signature page follows]

IN WITNESS WHEREOF, Lessor and Lessee have executed this Master Lease as of the day and year first above written.

LESSOR:

BB&T EQUIPMENT FINANCE CORPORATION

By: _____
Name: STEPHEN GRAY
Title: Senior Vice President

LESSEE:

GROVE RESOURCES, LLC

By: _____
Name: MATTHEW C. BITTNER
Title: TREASURER