EQUIPMENT SCHEDULE NO. 1 DATED NOVEMBER 6, 2012
TO MASTER EQUIPMENT LEASE AGREEMENT DATED AS OF November 6, 2012

All of the terms of the Master Equipment Lease Agreement described above (as amended, supplemented or modified from time to time, the "Master Lease") between BB&T Equipment Finance Corporation ("Lessor") and Oak Grove Resources, LLC ("Lessee") are incorporated by reference herein. Capitalized terms used, and not otherwise defined, herein shall have the meanings ascribed thereto in the Master Lease. This Equipment Schedule as it incorporates the terms of the Master Lease and each schedule, exhibit and rider attached hereto is referred to as this "Lease". This Equipment Schedule, and the Master Lease, as incorporated herein, shall constitute a separate and enforceable lease. If any term of any schedule, exhibit or rider hereto conflicts with or is inconsistent with any term of this Equipment Schedule or the Master Lease, the terms of such schedule, exhibit or rider shall govern.

1. Equipment; Location. This Equipment Schedule relates to the Equipment described on Schedule 1 attached hereto (collectively, the "Equipment"). The Equipment is located at:

    8360 Taylors Ferry Road
    Bessemer, AL 35023

2. Financial Terms.

    (a) Base Lease Term Commencement Date shall be the date shown on the Acceptance Certificate or if completed, the date set forth in the following space: November 6, 2012

    (b) Base Lease Term: 60 months

    (c) Base Term Rental: $437,074.26

    (d) Rent Payment Dates: Quarterly in arrears commencing with February 6, 2013 and continuing on the same day of each calendar quarter thereafter until and including the Expiration Date.

    (e) Expiration Date: November 5, 2017

    (f) Lessor's Capitalized Cost: $8,203,686.07

    (g) Purchase Options (see Section 5(a) below):

    (h) The "Stipulated Loss Value" for the Equipment shall be equal to Lessor's Capitalized Cost for such Equipment multiplied by the applicable percentage amount for the relevant Rent Payment Date set forth on Schedule 2 attached hereto.

3. Rent and Tax Payments. On each Rent Payment Date during the Base Lease Term, Lessee shall pay (i) the Base Term Rental for the Equipment, and (ii) in respect of Taxes scheduled to become due, such amounts monthly as Lessee determines will be due and payable. In addition to the foregoing, on the Base Lease Term Commencement Date, Lessee

4040

shall pay to Lessor as interim rent for each day from the Delivery and Acceptance Date to the Base Lease Term Commencement Date (if different), the sum of (A) simple interest at the Prime Rate on the outstanding principal balance of Lessor's Capitalized Cost as daily rent and (B) such amounts daily in respect of Taxes as Lessee determines will be due and payable.

4. *Maintenance and Return.* During the Term of this Lease, the Equipment must be operated and maintained in accordance with the terms and conditions set forth on Schedule 3 attached hereto. For purposes of this Lease, the Return Condition shall include satisfaction of the terms and conditions set forth on Schedule 3 attached hereto.

5. *End of Term Options.* Upon the expiration of the Term, Lessee shall exercise with respect to all, but not less than all, of the Equipment one of the following options in accordance with the terms hereof:

(a) *Purchase Option.* So long as (i) no Default or Event of Default has occurred and (ii) this Lease shall not have been earlier terminated, Lessee shall have the right upon the terms and conditions set forth below, to purchase all but not less than all of the Equipment upon expiration of the Term, for a purchase price equal to (a) all Rent and other amounts then due and payable under this Lease (including the Basic Rent Payment due on such date), plus (b) $1.00, plus (c) all applicable sales taxes, provided that Lessee gives Lessor written notice of Lessee's intent to exercise such right not less than one hundred eighty (90) days prior to the end of the Term. If Lessee exercises its right to purchase the Equipment in accordance with the terms hereof, upon payment of the purchase price and all other amounts then due and payable under this Lease, Lessor will deliver to Lessee a bill of sale transferring title to the Equipment to Lessee on an "as-is, where-is" basis without representation or warranty of any kind except that Lessor shall warrant that the Equipment is free, clear and unencumbered of all Liens arising by, through or under Lessor except for such Liens that Lessee is required to remove pursuant to the terms of the Lease.

(b) *Return Option.* If Lessee fails to purchase the Equipment pursuant to the provisions of Sections 5(a) hereof, Lessee shall return the Equipment to Lessor in accordance with the terms of Section 4 of this Equipment Schedule and Section 14 of the Master Lease.

6. PAYMENT AUTHORIZATION. Lessor is hereby irrevocably authorized and directed to pay the Total Invoice Cost specified above as follows:

| Company Name | Wire Instructions | Amount |
|---|---|---|
| Oak Grove Resources, LLC | Fifth Third Bank<br>ABA #: 042000314<br>Account #: 7522036156 | $8,203,686.07 |

2

Lessor is hereby authorized to insert such factually correct information as is necessary to complete this Equipment Schedule, including (without limitation) the date of execution, and the rental payment amount(s) and factor(s).

7. CONVEYANCE OF INTEREST. In consideration of the payment by Lessor of the amount specified herein as the Total Invoice Cost of the items of Equipment listed on the Schedule of Equipment attached hereto, the receipt and sufficiency of which are hereby acknowledged, Lessee does hereby convey, assign, transfer and set over to Lessor an interest in such Equipment, together with whatever claims and rights Lessee may have against the manufacturer and supplier of such Equipment, including (but not limited to) all warranties with respect thereto. The conveyance contemplated hereby is solely for the purpose of granting to Lessor a security interest in the Equipment. All Equipment in which an interest is conveyed hereby shall remain in the possession of Lessee pursuant to the Lease.

Lessee represents and warrants that: (a) Lessee has good and marketable title to such Equipment conveyed hereunder and does hereby transfer an interest therein free and clear of any and all encumbrances, liens, charges or defects; (b) the transfer of an interest in such Equipment (1) has been duly authorized by all necessary action on the part of Lessee, (2) does not require the consent of any stockholder, member, trustee or holders of any indebtedness of Lessee, except such as have been duly obtained, and (3) does not and will not contravene any law, governmental rule, regulation or order now binding on Lessee, or the organizational documents of Lessee, or contravene the provisions of, or constitute a default under, or result in the creation of any lien or encumbrance upon the property of Lessee under, any indenture, mortgage, contract or other agreement to which Lessee is a party or by which it or its property is bound; and (c) no filing or recordation must be made, no notice must be given, and no other action must be taken with respect to any state or local jurisdiction, or any person, in order to preserve to Lessor all the rights transferred hereby.

Except as expressly modified hereby, all terms and provisions of the Master Lease shall remain in full force and effect. This Equipment Schedule is not binding or effective until executed by Lessor and Lessee.

[Remainder of page intentionally left blank; signature page follows]

IN WITNESS WHEREOF, Lessee and Lessor have caused this Equipment Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:                                              LESSEE:

BB&T EQUIPMENT FINANCE CORPORATION                   OAK GROVE RESOURCES, LLC

By:_____                   By: _____
Name:_____                   Name: MATTHEW C BITTNER
Title:_____                   Title: TREASURER

THIS EQUIPMENT SCHEDULE MAY BE EXECUTED IN SEVERAL COUNTERPARTS. TO THE EXTENT THAT THIS EQUIPMENT SCHEDULE CONSTITUTES CHATTEL PAPER (AS SUCH TERM IS DEFINED IN THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN ANY APPLICABLE JURISDICTION), NO SECURITY INTEREST IN THIS EQUIPMENT SCHEDULE MAY BE PERFECTED THROUGH THE TRANSFER OF POSSESSION OF ANY COUNTERPART OTHER THAN THE ORIGINAL COUNTERPART HEREOF MARKED AS COUNTERPART NO. 1 ON THE SIGNATURE PAGE THEREOF.

THIS IS COUNTERPART NO. _____.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Equipment Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:

BB&T EQUIPMENT FINANCE CORPORATION

By: *[signature]*
Name: STEPHEN GRAY
Title: Senior Vice President

LESSEE:

OAK GROVE RESOURCES, LLC

By: *[signature]*
Name: MATTHEW C BITTNER
Title: TREASURER

THIS EQUIPMENT SCHEDULE MAY BE EXECUTED IN SEVERAL COUNTERPARTS. TO THE EXTENT THAT THIS EQUIPMENT SCHEDULE CONSTITUTES CHATTEL PAPER (AS SUCH TERM IS DEFINED IN THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN ANY APPLICABLE JURISDICTION), NO SECURITY INTEREST IN THIS EQUIPMENT SCHEDULE MAY BE PERFECTED THROUGH THE TRANSFER OF POSSESSION OF ANY COUNTERPART OTHER THAN THE ORIGINAL COUNTERPART HEREOF MARKED AS COUNTERPART NO. 1 ON THE SIGNATURE PAGE THEREOF.

THIS IS COUNTERPART NO. _____.

4

## SCHEDULE 1 TO EQUIPMENT SCHEDULE NO. 1

### DESCRIPTION OF EQUIPMENT

| Vendor Name & Invoice No. | Description of Equipment | Quantity | Invoice Total |
|---|---|---|---|
| Joy Mining Machinery Invoice No: Various | Joy Longwall System, Model 7LS1D S/N: LWS827 | 1 | $4,352,045.00 |
| Joy Mining Machinery Invoice No: Various | Joy Longwall System, Model 7LS1D S/N: LWS799 | 1 | $3,851,641.07 |
| Total: $8,203,686.07 | | | |

## SCHEDULE 2 TO EQUIPMENT SCHEDULE NO. 1

### STIPULATED LOSS VALUES

| Rent Payment Number | Lessor's Capitalized Cost | Rent Payment Number | Lessor's Capitalized Cost |
|---|---|---|---|
| 1 | 98.73 | 11 | 48.78 |
| 2 | 93.93 | 12 | 43.55 |
| 3 | 89.08 | 13 | 38.27 |
| 4 | 84.19 | 14 | 32.95 |
| 5 | 79.26 | 15 | 27.58 |
| 6 | 74.28 | 16 | 22.17 |
| 7 | 69.27 | 17 | 16.71 |
| 8 | 64.21 | 18 | 11.21 |
| 9 | 59.11 | 19 | 5.66 |
| 10 | 53.97 | 20 | 0.00000 |

## SCHEDULE 3 TO EQUIPMENT SCHEDULE NO. 1

### MAINTENANCE AND RETURN CONDITIONS

1. Maintenance. During the term of the Lease, the Equipment must be operated and maintained in accordance with the manufacturer's specifications and in a manner which would not limit any manufacturer's warranty thereon. All components, fuels and fluids installed on or used in connection with the Equipment must meet the manufacturer's minimum standards.

2. Notice of Return.

    (a) At the expiration of the Term of the Lease or any renewal term thereof, or earlier termination or cancellation thereof, Lessee shall return all, but not less than all of the Equipment to a location and in the manner designated by Lessor anywhere within the continental United States within 500 miles of the original delivery location at Lessee's sole expense, including as reasonably required by Lessor, securing arrangements for the disassembly and packing for shipment by an authorized representative of the manufacturer of the Equipment, shipment with all parts and pieces on a carrier designated or approved by Lessor. The Equipment is required to be maintained by the Lessee and in such condition as will make the Equipment immediately available to perform all functions for which the Equipment was originally designed. Lessee shall return equipment at Lessee risk.

    (b) The Lessee shall give Lessor written notice ("Notice of Return") by Certified Mail to the aforementioned street address set forth in Section 21 (c) of the Master Lease Agreement no less than one hundred eighty (180) days prior to the Lease expiration date of Lessee's intention to return the equipment or negotiate to purchase the Equipment or renew the Lease term at the then Fair Market Value.

    (c) Such Notice of Return will contain a detailed inventory of the Equipment and all components thereof, including a listing of model and serial number of all components comprising the Equipment.

    (d) Cooperate with Lessor in attempting to remarket the equipment, including display and demonstration of the Equipment to prospective purchasers or lessees, and allowing Lessor to conduct any private or public sale or auction of the Equipment on Lessee's premises in addition to storing and insuring the equipment (at Lessee's sole expense) for a period not to exceed one hundred eighty (180) days beyond the expiration date or written notification period.

    (e) At least (90) days prior to the return of the equipment, Lessee shall at its own expense have an original Manufacturer Equipment Dealer Service Representative or similarly qualified equipment maintenance representative acceptable to Lessor formally inspect the equipment on the behalf of Lessor in order to ensure compliance with return requirements and identify any damage deficiencies that may exist.

7

3. <u>Inspection.</u> At any time during the Lease and after receipt of the Notice of Return, Lessor shall with reasonable notice to Lessee have the right during normal business hours to inspect the Equipment. Lessee shall cooperate with Lessor in scheduling such inspection and in making the Equipment available for inspection by Lessor or its agents.

4. <u>Records.</u> Upon delivery of each item of Equipment, Lessee shall deliver to Lessor all maintenance records and all other similar documents pertaining to the Equipment.

5. <u>Transportation.</u> The Equipment will be transported in accordance with the manufacturer's recommendations and applicable governing laws, rules, and regulations. Lessee is fully responsible for any and all costs relating to the packaging and shipping of the Equipment in question to a location as so designated by Lessor anywhere within the 500 miles of the original delivery location.

6. <u>Packing.</u> The Equipment shall be disassembled and packed by or under the supervision of the manufacturer or such other person(s) designated by Lessor, all in accordance with the manufacturer's recommendations.

7. <u>Report.</u> At least sixty (60) days prior to the scheduled date of return and redelivery, Lessee shall, at its own cost and expense, provide Lessor with the report of a certified dealer or manufacturer of the Equipment, or such other qualified party reasonably acceptable to Lessor, stating that such person has performed inspection and testing of the Equipment and that such Equipment is in the condition required by Section 8 of the Rider.

8. <u>Condition of the Equipment.</u> Upon delivery of each item of Equipment, the Equipment shall be:

    (a) Tires: All tires shall be the same original size, type, grade, and manufacturer (or similar quality manufacturer) as upon delivery to Lessee (whether upon delivery to Lessee the tires were provided by the manufacturer or by the Lessee). The tires on each unit being returned shall have an average for that unit of a least 50% of original tread remaining.

    (b) Power Train: The power train assembly shall be subjected to an oil sample analysis that shows wear on the assembly does not exceed the manufacturer's then current standards for normal wear.

    (c) Undercarriage: If any unit(s) of Equipment is equipped with an undercarriage, the track tension shall be properly tightened to manufacturer's specifications, lubrication seals will not leak, all track shoes and fasteners will not contain any cracks or breaks, and all components of the undercarriage will be the same original size, type, grade and manufacturer. The undercarriage shall have at least a 50% or original life remaining on all parts.

    (d) Brakes: Brake drums shall not be cracked and shall not exceed manufacturer's recommended wear limits. Brake linings shall have at least 50% remaining wear. Brakes shall show no signs of fluid or oil leaks.

    (e) Frame and Suspension: Neither the frame rails nor the suspension shall contain any breaks, cracks, bends or warps. Any repairs to these components of the

8

Equipment shall be completed by the manufacturer or a manufacturer certified repair shop. Suspension cylinders shall hold manufacturer's recommended pressure.

(f) Arms and Booms: All hydraulics must be clean and free of all leakage. There shall be no broken, cracked or otherwise defective components present and all repairs must be completed by a manufacturer approved facility.

(g) Rotec (Rotation system or Swing Bearing): If any unit of Equipment is equipped with such, the planetary glide-swing, braking system and hydraulic systems shall be subject to an inspection and bearing wear must meet manufacturer's specifications and have at least 50% remaining life before the next overhaul or replacement.

(h) Bed Liner: Any truck equipped with a bedliner will be returned with such and it shall contain no broken welds, cracks, or holes and the liner will have at least 50% of its original thickness remaining.

(i) Hydraulic System: All pumps, motors, valves and cylinders shall be in good operating condition and without leaks. The hydraulic system shall be subjected to an oil sample analysis to insure system is free from contaminants. All components will meet manufacturer's rated specifications.

(j) Air filters: All air filters shall be clean and within manufacturer's specifications.

(k) Electrical System: The alternator shall be able to be operated properly and the battery shall be able to hold a charge. All wire harnesses are to be kept secured, dry and clean, dust free with tie-downs that the manufacturer puts on the machine to hold the wiring harnesses in place. All gauges and fluid indicators shall be intact and in operating condition. If there are any on-board computer systems, they must be in good operating condition and able to operate within the manufacturer's specifications.

(l) Engines: The engine must have been maintained in accordance with manufacturer's recommendations and in conformance with requirements of the manufacturer's warranty, as the same may be amended from time to time. At the time of redelivery the engine must have at least 50% useful life remaining before the next overhaul or replacement as recommended by the engine manufacturer and published in standard maintenance manuals. Determination of satisfaction of these specifications shall be made by, but not limited to, subjecting the engine to manifold pressure, oil analysis, dynometer, blowby, turbo boost and exhaust back pressure test that show wear that does not exceed the manufacturer's then current standards for normal use. All tests shall be performed by a factory-authorized service center, at Lessee's expense, and in accordance with the manufacturer's then recommended standards and procedures.

(m) Blades, Buckets or other attachments: If any of the Equipment is equipped with a blade, bucket or any other attachment, these will have at least 50% remaining life and no broken or cracked teeth when the Equipment is returned.

(n) General condition: Each item of the Equipment shall be returned fully assembled

9

and the cost of necessary repair for damages to exterior and interior materials including door operation, floor damage, dents in metal body parts, or broken glass, may not exceed Five Hundred Dollars ($500.00). All operating components must be able to perform their function as originally intended. All mechanical and electrical Equipment must be in good repair and proper operating condition. The Equipment shall be washed, cleaned and/or steam-cleaned, where applicable, and without rust before being returned. The Equipment shall be in compliance with all applicable United States Federal, State and Local safety standards and regulations as applicable to each item of Equipment.

(o) Free of all advertising and insignia placed thereon by Lessee, with the exception of those placed on the Equipment pursuant to Section 8 of the Master Lease.

(p) Excess Usage Fees: If applicable, Lessee shall reimburse Lessor in the amount of $350 per excess hour for each Komatsu truck operated over 7,000 hours per annum.

1950523.1